# Exhibit A

Ellen M. McDowell
Atty. ID No. 008901989
McDowell Law, PC
46 West Main Street
Maple Shade, NJ 08052
Telephone: (856) 482-5544
Telecopier: (856) 482-5511
emcdowell@mcdowelllaw.com         **Attorneys for Plaintiffs**

|  |  |
|---|---|
| **FRANK FORMICA and** : | **SUPERIOR COURT OF NEW JERSEY** |
| **AMY FORMICA,** : | **ATLANTIC COUNTY** |
| Plaintiffs : | Civil Action |
| v. : | Docket No. ATL-L- |
| **PARKE BANCORP, INC.,** : | **COMPLAINT WITH JURY DEMAND** |
| Defendant : |  |

  Plaintiffs Frank Formica and Amy Formica hereby Complain against the Defendant, ParkeBank, and state as follows:

  1. Plaintiffs Frank and Amy Formica are a married couple residing at 618 Hay Road, Absecon, New Jersey 08201.

  2. Defendant Parke Bancorp. Inc. ("Parke") is a New Jersey corporation with a principal place of business at 601 Delsea Drive, Washington Township, New Jersey.

  3. Plaintiffs Frank Formica and Amy Formica borrowed the sum of $320,000.00 from Parke on May 22, 2017 and signed a Promissory Note wherein they agreed to repay the amount borrowed (the "Note").

  4. The sum borrowed by Frank and Amy Formica as per the Note was secured by a Mortgage (the "Mortgage") against their home at 153 Glenside Avenue, Linwood, New Jersey (the "Property").

5.      Frank Formica filed a Chapter 7 bankruptcy petition on December 9, 2020.

6.      In June of 2020, approximately six months before the bankruptcy petition was filed, Frank Formica and Amy Formica listed the Property for sale.

7.      In the months after the Formicas listed the Property for sale they had over 40 showings.

8.      After the Chapter 7 case was filed, the Formicas received an offer for $460,000 for the Property.

9.      The Formicas accepted the offer and entered into an Agreement of Sale (the "Agreement") on December 22, 2020.

10.      Under the Agreement, the closing was scheduled for January 28, 2021.

11.      Because Frank Formica was in a bankruptcy proceeding, the closing could not take place unless there was an order of the Bankruptcy Court authorizing the sale or confirming that the bankruptcy trustee had abandoned the Property.

12.      Through his counsel, Plaintiff Frank Formica filed a Motion to Compel Sale of Property in the Bankruptcy Court (the "Motion"). A hearing on the Motion was scheduled for January 26, 2021.

13.      In addition to the Mortgage it held against the Property, Parke also holds mortgages against properties owned by John Galt, LLC, a real estate holding company wholly owned by Plaintif Frank Formica (the "Commercial Loans").

14.      Plaintiff Amy Formica is not a guarantor of the John Galt, LLC Commercial Loans.

15.      Plaintiff Amy Formica's only debt to Parke was for the obligation secured by the

Mortgage against the Property.

16. On Friday, January 22, 2021, Parke's lawyer emailed the title company dealing with the sale of the Property and stated as follows:

> As per our prior discussions, we represent Parke with reference to the above. Accordingly, please see that all communication, whether orally or in writing is forward to me.
>
> I am annexing the payoff statement you requested. If you need anything else please do not hesitate to call.

17. The Payoff statement emailed by Parke's lawyer to the title company did not just include the amounts due under the Note and Mortgage on the Property, but instead included all the debt owed to Parke by John Galt, LLC for the Commercial Loans which totaled over $1.4 million. As such, it did not provide the information required by the title company.

18. On January 25, 2021, the title company emailed Parke's lawyer and asked:

> Hello Eric,
>
> Are you able to send me a payoff statement that only includes the amount required to clear the lean for 153 Glenside? [sic]

19. Parke's lawyer responded as follows:

> The hearing before the Bankruptcy Court is tomorrow morning. For a wide variety of reasons, I am far from confident the sale will be approved. If not, the issue is moot.
>
> Please standby.

20. At the hearing on January 26, 2021, the Bankruptcy Court denied the Motion, but said that it would be open to signing a Consent Order for Abandonment given that the Trustee represented at the hearing that he was willing to abandon the Property and none of the parties participating in the hearing objected.

21. Directly after the hearing, the title company emailed Parke's lawyer as follows:

> Good morning Eric,
>
> The Listing Agent has advised that the sale has been approved. Please send the revised payoff that only includes the lien for 153 Glenside, at your earliest convenience.

22. Parke's lawyer responded as follows:

> Your listing agent is misinformed. Suggest you speak with Ellen McDonald, counsel to the Frank [sic].

23. Plaintiff Frank Formica's lawyer prepared a Consent Order providing for the Trustee's abandonment of the Property on the same day as the hearing and circulated it to all counsel via email.

24. In response to counsel's email with the Consent Order, Parke's lawyer responded and said:

> No objection. You are welcome to e sign for me to extent necessary as it only relates to Abandonment. If you can get everyone else's approval on global resolution send their written consent and provide for at least 35-45k extra for us and I will recommend it and I would expect to get it done very quickly.

25. Counsel interpreted Parke's lawyer email to mean that he was asking that the Formicas pay $35,000 to $45,000 over and above Parke's payoff on the Note and Mortgage.

26. Counsel for the Formicas obtained the signatures of all other counsel on the Consent Order and submitted it to the Court on January 27, 2021. The Court entered the Consent Order the same day.

27. Later on January 27, 2021, Frank Formica and his lawyer spoke to Parke's lawyer in a phone conference. They asked that Parke's lawyer provide a payoff for just the amount due

4

under the Note and Mortgage. In response, Parke's lawyer demanded that the Formicas provide him with a rent roll for the John Galt tenants, a copy of the proposed HUD-1 and the payoffs for junior liens against the Property. He represented that upon receipt of those documents he would speak with his client about providing a payoff on the Mortgage, but he insisted that he wanted an additional $10,000 for Parke (not the $35,000 to $45,000 he demanded the previous day).

28. Mr. Formica told Parke's lawyer that he did not have an additional $10,000 to pay Parke, that he and Amy Formica were not receiving any monies from the closing, and reiterated that he just needed a payoff that represented what was owed on the Mortgage so that the closing could go forward the next day as scheduled. Mr. Formica explained that the junior mortgage holders (Frank's ex-wife Ruth Formica and Amy's creditor Nicollete Property Group) had agreed to reduce their payoff claims and each take 50% of the net proceeds to release their liens so no "extra" funds were available for Parke.

29. Parke's lawyer said he would speak to his client after receiving the documents he had demanded be produced.

30. Despite the fact that Parke was obligated to provide a payoff statement for the sums due under the Note and Mortgage without forcing Mr. Formica to "jump through the hoops" held up by Parke's lawyer, Mr. Formica began gathering the information demanded by him.

31. Parke's lawyer then emailed the Formicas' lawyer as follows to further "put the screws" to the Formicas:

> As per our discussions, upon receipt of the releases and written confirmation of what each stakeholder is going to receive I will speak with Parke and obtain

5

further authority. If you want to close tomorrow I would suggest you do this ASAP.

32. By the afternoon of January 27, 2021, Mr. Formica had provided Parke's lawyer with all of the documentation he had demanded in order to produce a payoff on the Note and Mortgage.

33. After receiving the requested documentation, Parke's lawyer sent the Formicas' lawyer the following email:

> There is nothing on this sheet about the "partial consideration" set forth on the release from the second as to what is being paid to the second? Are they getting anything?
>
> If not, it appears 55k is left with, based on Frank's representation, 27,500 going to Frank and his wife and 27,500 going to his ex-wife Ruth Formica.
>
> Again, if all of the assumptions are right, the minor 10k adjustment to the Parke Payoff would still leave 22,500 for him and his wife and 22,500 for his ex-wife Ruth.
>
> I believe I can get this done but need written confirmation from you that the assumptions are correct and the de minimus tweak is acceptable so I can get actual authority.

34. Frustrated with Parke's lawyer's failure to recognize the fact that there would be no proceeds of sale left for the Formicas, theiri counsel responded as follows:

> That is not true. The draft HUD is incorrect largely because your client has not provided a payoff. The remaining proceeds after Parke's mortgage and [judgment holder] Fulton Bank are going to be split equally between [mortgagees] Nicolette and Ruth Formica. Frank and Amy are receiving nothing.
>
> I urge you to have your client issue a payoff that reflects Parke's first mortgage only. That is all Parke is entitled to as you well know.
>
> Unless that happens by tomorrow morning, there could be unpleasant consequences for your client and others.

6

35. In the meantime, Mr. Formica was also frustrated by Parke's intractability and he contacted a friend that worked at Parke's lawyer's law firm in an effort to convince the firm to help him obtain a payoff so that he and his wife could go to closing less than 24 hours later.

36. When Parke's counsel learned about the contact, he sent the Formicas' lawyer the following email:

> Please advise Frank again that under no circumstances can I or any other member of the firm deal with him or negotiate with him directly while he is represented by you. All communications with respect to this matter should go from you to me. Further, I have discussed the HUD-1 with my client. Simply stated, they were shocked to find out that 27,500 was going to Frank and his wife and 27,500 is being used by Frank to pay his support obligations to his ex-wife.
>
> I urge you to speak to Frank immediately and tell him to immediately empower me to try and get him authority to take a mere 10k under these circumstances. He is making a mistake trying to squeeze others, including my partners, principals of the Bank or otherwise. I will have no chance at getting him this favorable resolution if this continues.
>
> Time to "fish or cut bait".

37. On the evening of January 27, 2021, Parke's lawyer and the Formicas' lawyer exchanged emails wherein Parke's lawyer accused the Formicas' counsel of unethical conduct for stating that there would be consequences if his client refused to provide a proper payoff.[1] Nevertheless, counsel urged him once again to produce a payoff so the closing could take place.

38. The same evening, the Formicas' lawyer emailed the title company and asked if by any chance Parke had provided a payoff that would permit them to complete the closing.

39. The title company responded early the next morning, the day of the closing, that

---

[1] Oddly, Parke's lawyer interpreted counsel's statement that there would be "consequences" for his client's failure to provide a payoff statement as a threat of criminal prosecution against the Bank.

7

they had received no such payoff, stating as follows:

> Title Forward needs a payoff that only includes the amount required to payoff and release the lien on 153 Glenside.

40. At 3:09 on January 28, 2021, 51 minutes before the closing was scheduled to take place, Parke's counsel emailed the Formicas' lawyer as follows:

> Now that you have had some time to calm down have you decided how you wish to proceed?

41. The Formicas' lawyer responded as follows:

> I am as calm as ever and I sincerely hope that you are too.
>
> I wish to proceed as follows: my client wants your client to have every dime it is entitled to from the sale of 153 Glenside Avenue.
>
> My client would like your client to issue a payoff to the title company that sets forth what is due under its mortgage on 153 Glenside Avenue and further represents that upon receipt of that amount it will release its lien so that the sale can go forward.
>
> My client has made deals with the junior lienholders to compromise their claims and take the remaining proceeds of sale as you are aware.
>
> My client will not walk away from this settlement with a single dime.
>
> Please do what is necessary to allow the sale to proceed.

42. Parke's lawyer responded with another long email full of invective and threats against Mr. and Mrs. Formica. The email concluded as follows:

> I think it is utterly foolhardy for you, your client, or any of the lien holders to refuse this generous and de minimus offer . . . [of $10,000 over and above the payoff amount] so that closing can occur tomorrow.[2] Please send me a revised

---

[2] Due to an issue with the buyer's financing, the closing had been rescheduled from January 28, 2021 at 4 p.m. to January 29, 2021 at 4 p.m.

> HUD-1 well prior to your closing so I can get final approval to send a reduced payoff to the title company.
>
> Your immediate attention to the above is required.

43. The next morning at 8:53 a.m., the Formicas' lawyer responded to Parke's lawyer as follows:

> Eric, the bulk of your assertions are totally unfounded and I will not respond to them.
>
> So far you have articulated no reason for my client to allow yours to take more funds from the closing than the payoff on the mortgage allows except for "just because."
>
> "Just because" is not a good reason, nor is some theory of how the mortgage was somehow amended to allow for cross-collateralization (it says nothing about cross-collateralization and I know you are aware of that).
>
> And once again, I NEVER threatened criminal charges and you know it. Please stick to the facts.
>
> Does this email below suggest that your client will provide and full and final release to Frank and Amy in exchange for $10,000? If that is what you are saying I will discuss with them.
>
> Otherwise, we are back to where we were yesterday. Your client needs to submit a payoff so this transaction can close at 4 p.m. today.

44. In response, Parke's lawyer stated:

> Everything contained in my email is directly from your submissions and undisputed. Our exchanges are not ambiguous. No objective person could view your threats differently than what you intended. Again, I will not banter with you at this point in time as it is clearly unproductive.
>
> If you mean by full release that we will abandon the cross collateral argument, not proceed with a nondischargability claim or move to set aside the mortgages as fraudulent conveyances in exchange for an increase on the HUD-1 of 10k than I will recommend it.
>
> Please speak with your client, obtain authority and put your proposal in a short,

9

clear writing and I will seek authority immediately thereafter.

45. After speaking with Mr. Formica, who at that point was exhausted by the conflict and simply wanted to get the exceedingly unpleasant situation caused by Parke Bank and Parke's lawyer behind him and consummate the closing, the Formicas' lawyer responded to Parke's lawyer with the following message:

> Please get me a proposed release. My clients will sign it and permit the payment to Parke of $10,000 over and above the mortgage payoff (assuming the mortgage payoff is correct) if the release is a full and final release of all claims.

46. Astonishingly, Parke's lawyer responded at 11:33 on the morning of closing day, just four hours and twenty seven minutes before the scheduled closing, saying:

> I just spoke with my client. They are agreeable to allowing the sale to go forward for 10k. They are not willing to do anything else at this point, including but not limited to provide any type of release for your client. All other rights are hereby reserved.
>
>  I will confirm this with the title clerk now.

47. This email was shocking as Parke's lawyer knew full well that there was no agreement to allow Parke Bank to take $10,000 additional from the proceeds of sale with absolutely no consideration. However, Parke's lawyer also knew that closing was just four hours away and that he had Frank and Amy Formica in an impossible situation as they were contractually bound to close on the sale of the Property. As set forth hereinafter, Parke's lawyer pressed his advantage mercilessly.

48. Directly after sending this email, Parke's lawyer sent a payoff to the title company that contained the payoff information limited to the Mortgage that included an additional payment to the Bank of $10,000 identified  "as agreed."

10

49. Mr. and Mrs. Formica never "agreed" to pay an additional $10,000 to Parke Bank over and above its payoff amount but ultimately decided that they had no choice but to capitulate and go forward on the terms improperly and illegally dictated by Parke Bank as they were contractually obligated to close on the sale of the Property.

50. The closing took place on the afternoon of Friday, January 29, 2021. Due to its inappropriate refusal to allow closing to proceed with the lawful amount due to it, Parke Bank received an additional $10,000 at closing to which it was not entitled.

51. The aditional $10,000 Parke received at closing was paid by Plaintiff Amy Formica, as it reduced the funds paid at closing to Nicollete Property Group, the holder of a mortgage against the Property for which only Amy Formica was obligated.

52. As a direct result of Parke's blatant misconduct, Plaintiffs Frank and Amy Formica have suffered damages.

53. After the closing, Plaintiff Frank Formica filed a Motion in Bankruptcy Court seeking sanctions against Defendant Parke for violating the automatic stay contained in Section 362 of the Bankruptcy Code.

54. Parke defended against the sanctions motion by arguing that it was entitled to the additional $10,000 proceeds of the sale of the Property because its Commercial Mortgages against the John Galt properties were also secured by the Property.

55. The Bankruptcy Court denied the sanctions motion, holding that Parke did not violate the automatic stay in seeking to be paid funds above its payoff amount.

56. The Bankruptcy Court did, however, affirmatively find that Parke only had a legal right to payment of the balance owed on its mortgage against the Property, not sums due on the Commercial Mortgages.

57. The Bankruptcy Court also held that the $10,000 received by Parke came from the proceeds of sale due to Plaintiff Amy Formica in that it reduced the funds paid to Nicolette Mortgage Group that only Amy Formica owed.

58. As such, the Bankruptcy Court held that Defendant took $10,000 from Plaintiffs to which it was not entitled, causing damages in that amount to the Plaintiffs.

59. Plaintiffs have also suffered damages in the form of significant attorneys' fees incurred seeking to compel Defendant to comply with its obligations under the law.

## FIRST COUNT

60. The prior paragraphs of this Complaint are referred to herein and made a part of this Count, but for the sake of brevity are not repeated in their entirety herein.

61. At all times hereinafter mentioned, Plaintiffs were "Persons" as defined in the New Jersey Consumer Fraud Act.

62. At all times pertinent hereto, Defendant Parke Bank was a "Person" as defined in the New Jersey Consumer Fraud Act.

63. As set forth herein, by refusing to issue a payoff statement for its Note and Mortgage unless Plaintiffs agreed to pay funds over and above what it was owed, Defendant engaged in the act, use and employment of an unconscionable commercial practice in contravention of N.J.S.A. 56:8-2 and the Consumer Fraud Act.

12

64. As a proximate result of Defendant's actions, Plaintiffs have sustained an ascertainable loss under the Consumer Fraud Act.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for (a) such sum of money as would reasonably and properly compensate them in accordance with the laws of the State of New Jersey, (b) in accordance with N.J.S.A. 56:8-1 et seq., treble damages, attorney's fees, costs, and interest, and (c) any other relief as the court may deem proper.

### SECOND COUNT

65. The prior paragraphs of this Complaint are referred to herein and made a part of this Count, but for the sake of brevity are not repeated in their entirety herein.

66. Parke's Mortgage states as follows: "LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied.

67. Parke breached the Mortgage by refusing to provide a discharge in exchange for "all amounts due under the Note."

68. As a proximate result of Defendant's breach, Plaintiffs have sustained damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for (a) such sum of money as would reasonably and properly compensate them in accordance with the laws of the State of New Jersey, and (b) any other relief as the court may deem proper.

### THIRD COUNT

69. The prior paragraphs of this Complaint are referred to herein and made a part of this Count, but for the sake of brevity are not repeated in their entirety herein.

70. Defendant Parke willfully deprived Plaintiffs of the sum of $10,000 by illegally demanding to receive such amount before it would issue a payoff on the Note and Mortgage and by receiving such sum at the closing of the sale of the Property.

71. As such, Defendant is liable to Plaintiffs for conversion.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for (a) such sum of money as would reasonably and properly compensate them in accordance with the laws of the State of New Jersey, (b) punitive damages, and (c) any other relief as the court may deem proper.

                                        MCDOWELL LAW, PC
                                        Attorney for Plaintiffs

                                        BY: */s/ Ellen M. McDowell*
DATED: May 12, 2021                      Ellen M. McDowell

## DESIGNATION OF TRIAL COUNSEL

Pursuant to New Jersey Court Rule 4:25-4, Ellen M. McDowell, Esq. is designated as trial counsel for the Plaintiffs in the above matter.

## JURY DEMAND

Plaintiffs demand trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

                                                MCDOWELL LAW, PC
                                                Attorneys for Plaintiffs

Dated:  May 12, 2021                    By:*/s/ Ellen M. McDowell*
                                                    ELLEN M. MCDOWELL

## **CERTIFICATION**

Pursuant to New Jersey Court Rule 4:5-1, the plaintiffs hereby certify that the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding, to the best of plaintiffs' knowledge or belief.  The plaintiffs further certify that they have no knowledge of any contemplated action or arbitration proceeding regarding the subject matter of this action and that, other than the parties set forth in this pleading, the plaintiffs are not aware of any other parties who should be joined in this action. In addition, plaintiffs recognize the continuing obligation of each party to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

                                                MCDOWELL LAW, PC
                                                Attorneys for Plaintiffs

Dated: May 12, 2021                     By: */s/ Ellen M. McDowell*
                                                   ELLEN M. MCDOWELL

**CERTIFICATION UNDER RULE 1:38-7(b)**

  I certify that all confidential and personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

               McDOWELL LAW, PC

               */s/ Ellen M. McDowell*
               Ellen M. McDowell
               Attorney for Plaintiffs

# Civil Case Information Statement

**Case Details: ATLANTIC | Civil Part Docket# L-001545-21**

**Case Caption:** FORMICA FRANK  VS PARKE BANCORP, INC.
**Case Initiation Date:** 05/12/2021
**Attorney Name:** ELLEN M MC DOWELL
**Firm Name:** MCDOWELL LAW, PC
**Address:** 46 W MAIN ST
MAPLE SHADE NJ 08052
**Phone:** 8564825544
**Name of Party:** PLAINTIFF : Formica, Frank
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION
**Document Type:** NJ eCourts Case Initiation Confirmation
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Frank Formica?** NO

**Are sexual abuse claims alleged by: Amy Formica?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/12/2021                                                                                          /s/ ELLEN M MC DOWELL
Dated                                                                                               Signed