**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FRANK and AMY FORMICA, | HONORABLE KAREN M. WILLIAMS |
| Plaintiffs, | |
| v. | Civil Action<br>No. 21-13867-KMW-SAK |
| PARKE BANCORP, INC., | |
| Defendant. | **OPINION** |

APPEARANCES:
ELLEN M. MCDOWELL, ESQ.
MCDOWELL LAW, PC
MAPLE SHADE, NJ 08052

    *Counsel for Plaintiffs Frank and Amy Formica*

WILLIAM P. RUBLEY, ESQ.
COOPER LEVENSON
1125 ATLANTIC AVENUE, 3RD FLOOR
ATLANTIC CITY, NJ 08401

    *Counsel for Defendant Parke Bancorp., Inc.*

**WILLIAMS, District Judge:**

### I. INTRODUCTION

Plaintiffs Frank and Amy Formica ("Plaintiffs") bring this action against Defendant Parke Bancorp, Inc. ("Defendant") alleging that Defendant violated the Truth in Lending Act ("TILA") 15 U.S.C. § 1639g when it issued a payoff statement that included an additional $10,000.00 above the payoff on the Note and Mortgage, among other claims related to breach of contract, conversion, and the New Jersey Consumer Fraud Act ("CFA").

Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 38), Plaintiff's Motion for Partial Summary Judgment, (ECF No. 39), Defendant's Opposition (ECF No. 43), Plaintiff's Opposition (ECF No. 44), and Defendant's Reply (ECF No. 45). For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.[1]

### II. BACKGROUND

In December of 2020, Plaintiff Frank Formica filed a petition for Chapter 7 bankruptcy, during which Plaintiffs decided to sell their residence on which Defendant held a first mortgage[2] and entered into an Agreement for Sale of the property with a closing scheduled for January 28, 2021. Defendant's Statement of Material Facts Not in Dispute ("DSMF") ¶¶1-3. Ultimately, the Bankruptcy Court permitted the sale to go forward on January 27, 2021. *See* DSMF ¶¶ 4-7. While working to consummate the sale, Plaintiffs and Defendant were communicating through their attorneys. DSMF ¶¶15, 17.

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.
[2] Defendant also held other mortgages against properties owned by Plaintiff Frank Formica. DSMF ¶8.

2

On January 22, 2021, Defendant's counsel sent a payoff statement to the title company, which included both the amounts due under the Note and Mortgage on the property, as well as the debt owed by Plaintiff Frank Formica on other investments. DSMF ¶11. Plaintiffs' and Defendant's counsel engaged in significant negotiations around the allocation of the sale's proceeds. DSMF ¶12. Defendant contends that Plaintiffs never sent a payoff statement request directly to Defendant, rather that all requests were sent through counsel. DSMF ¶15. Plaintiffs contend that Plaintiff Frank Formica asked Parke Bancorp's President for an accurate payoff statement after the initial statement sent on January 22, 2021 included other debts unrelated to the property. Plaintiff's Counterstatement of Material Facts ("PCMF") ¶¶14-15.[3]

On January 29, 2021, Defendant provided a payoff statement that included an additional $10,000.00 to be paid to Defendant. *See* Defendant's Counterstatement of Material Facts ("DCMF") ¶10. That same day, the closing went forward with the additional $10,000.00 reduction in payoff to Nicolette Property Group sent to Defendant. DSMF ¶¶20-21.

The parties dispute whether or not the additional $10,000.00 was an agreed to sum, or if it was impermissibly included in the payoff to Defendant at the eleventh hour. *Compare* DSMF ¶22 *and* PCMF ¶¶53-60.

### III. LEGAL STANDARDS

**Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] Parke Bancorp's President, Vito S. Pantilione, provided an affidavit that asserts that he had "a telephone conversation with [Plaintiff] Frank Formica wherein [he] complained about a payoff he had received for a mortgage and not held by the bank" and that he requested a copy of the payoff statement from another employee for his own benefit and "not for anyone else. . . I never intended nor did I ever send a copy of any payoff for Mr. Formica to Mr. Formica or to anyone on his behalf." Def.'s Reply Br. at Pantilione Affidavit & Ex. A.

56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a genuine issue for trial.''" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

4

## IV.  DISCUSSION

The Court will focus its analysis on Plaintiffs' TILA claim, which is the sole count discussed in Plaintiffs' Motion for Partial Summary Judgment, as well as the only source of federal jurisdiction in this case. Pl.s' Br. at 2.

Plaintiffs allege that Defendant failed to provide them with an accurate payoff statement for the closing of their home and thus violated the TILA pursuant to 15 U.S.C.A. § 1639g. Essentially, the inclusion of the extra $10,000.00 for Defendant rendered the payoff statement delivered on January 29, 2021 inaccurate.

TILA was instituted by Congress to ensure "meaningful disclosure of credit terms . . . and to protect the consumer against inaccurate and unfair [practices.]" *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998) (quoting 15 U.S.C. § 1601). The Court is to construe TILA liberally in favor of the consumer. *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir. 1975). TILA has specific provisions that govern liability, namely, 15 U.S.C. § 1640(a), which provides "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . is liable." *Id.* The term "creditor" has a narrow definition under the statute and refers "only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).

The specific violation that Plaintiff asserts under TILA is pursuant to 15 U.S.C. § 1639g, which provides that "[a] creditor or servicer of a home loan shall send an accurate payoff balance

5

within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." *Id.* Regulation Z is the Consumer Financial Protection Bureau's implementation of 15 U.S.C. § 1639g, which explains that a payoff balance request is "any request from a consumer, or appropriate party acting on behalf of the consumer, which inquires into the total amount outstanding on the loan, or the amount needed to pay off the loan." 78 Fed. Reg. 10902, 10957 (Feb. 14, 2013). Regulation Z further instructs that "a creditor, assignee, or servicer, as applicable must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. . . A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement." 12 C.F.R. § 1026.36(c)(3). Payoff statements should be issued "according to the best information available at the time." 78 Fed. Reg. at 10958.

Here, the central question is whether a payoff request made through Defendant's attorney triggers Defendant's obligations pursuant to 15 U.S.C. § 1639g.[4] In light of the plain reading of the statute and its definitions, the answer is no.

Statutory interpretation "properly begins with the language of the statute itself, including all of its parts," and "where the meaning of a statute is plain, a court will make no further inquiry unless the literal application of the statute will end in a result that conflicts with the intentions of Congress." *D.S. v. Neptune Twp. Bd. of Educ.* 264 Fed. App'x 186 at 188-89 (3d Cir. 2008) (internal citations and quotations omitted). Definitions in a statute should be "presumptively

---

[4] While Plaintiffs assert that they communicated to Parke Bancorp's President, a phone call is not sufficient to trigger obligations pursuant to 15 U.S.C. § 1639g: "limitations on the requirement to provide a payoff statement only in response to written requests reflects Congress's clear change in the language from the existing regulation. Creditors, assignees or servicers are permitted, however, to continue providing payoff statements in response to an oral request, even if such requests do not trigger the regulatory payoff statement request requirements." 78 Fed. Reg. at 10957. Therefore this Court will only analyze the requests made to Defendant's counsel.

6

taken as reflecting Congressional intent" and thus a court need not resort to legislative history unless the statutory language is ambiguous. *Id.* at 189.

While the Court reads the statute and its accompanying regulations liberally, as discussed above TILA specifically limits liability to creditors, which is defined by the statute as "*only* to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." *See* U.S.C. § 1640(a); 15 U.S.C. § 1602(g). Further, 15 U.S.C. § 1639g, obligates only creditors and servicers of a home loan. ("A creditor or servicer[5] of a home loan shall send an accurate payoff balance . . ." 15 U.S.C. § 1639g). 15 U.S.C. § 1639g's implementing regulation is limited to "a creditor, assignee, or servicer, as applicable" to provide a payoff statement, and such "creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement." 12 C.F.R. § 1026.36(c)(3).

It is clear from the plain language that the statute does not envision liability for entities or persons outside of the role of creditor. Here, Plaintiffs argue that the attorney-client relationship made Defendant's counsel an agent of the bank and as an agent a request made upon him would trigger the same obligations under 15 U.S.C. § 1639g as if the request was made to Defendant directly. Pl.'s Br. at 8. However, the statue is clear that it only seeks to hold creditors liable, and

---

[5] Defendant and Plaintiffs do not contend that Defendant's counsel could fall under the definition of "servicer" nor would counsel fall under that definition under the plain language of the statutory definition, which states that a servicer is "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan." *See* 15 U.S.C. § 1602(dd)(7); 12 U.S.C. § 2605(i)(2).

7

that only creditors and assignees that "currently own the mortgage loan or the mortgage servicing rights" are subject to the requirements related to payoff statements. *See* 12 C.F.R. § 1026.36(c)(3); U.S.C. § 1640(a); 15 U.S.C. § 1602(g); 15 U.S.C. § 1639g. Defendant's counsel does not qualify as a creditor or assignee per TILA's definitions, as he was not the person or entity that owned the mortgage loan or mortgage servicing rights at the time the request for a payoff statement was made. Additionally, and critically, none of these provisions include the term "agent." *See id.* As Defendant notes, TILA does include the term "agent" in other provisions related to credit cards. *See* Def.'s SJ Br. at 7; *see also* 15 U.S.C. § 1602(o).[6] The Court notes that "[a] statutory provision is not ambiguous simply because by itself, [it is] susceptible to differing constructions[,] [r]ather, in examining the statutory language, we take account of the specific context in which that language is used, and the broader context of the statute as a whole." *Hayes v. Harvey*, 903 F.3d 32, 41 (3d Cir. 2018) (internal citations and quotations omitted). Given the context of the specific provisions related to the obligations creditors have with regard to payoff statements and use of the term "agent" in other provisions of TILA, if Congress intended to bind agents in relation to payoff statement obligations, it would have included the term.

The Court notes that other decisions regarding attorneys transmitting payoff statement requests by courts outside of this Circuit also come to the same conclusion due to "TILA's plain language." *See Larkins v. Fifth Third Mortg. Co.*, 376 F. Supp. 3d 784, 790 (S.D. Ohio 2019)[7];

---

[6] In pertinent part: "The term 'card issuer' means any person who issues a credit card, or the agent of such person with respect to such card." *Id.*

[7] "In an attempt to save its claim, the Larkins argue that agency principles should apply here to somehow qualify Fifth Third's foreclosure counsel as a 'creditor.' The argument is contrary to TILA's plain language. The definition (set forth above) does not include 'agents' of the creditor, and neither 'agent' nor 'agents' appears in 15 U.S.C. § 1639g or 12 C.F.R. § 1026.36(c)(3). *See also Langenfeld v. Chase Bank United States, N.A.*, 537 F. Supp. 2d 1181, 1205 (N.D. Okla. 2008) ('Hanna, a law firm, does not itself meet the definition of 'creditor' in TILA.')."

8

*Kantz v. Bank of Am., N.A.*, No. 17-51, 2018 WL 1948164 at *4 (M.D. Tenn. Apr. 25, 2018)[8]; *Molina-Salas v. Aldridge Pite, LLP*, (N.D. Ga. Jan. 21, 2019).[9] Although these decisions are not binding, they are indeed persuasive.

Plaintiff attempts to distinguish this case from *Larkins* on the grounds that the plaintiffs in *Larkins* were asserting TILA violations based on the delay of receipt of a payoff statement. *See* Pl.'s Br. at 7-8. However, Plaintiffs' interpretation of *Larkins'* conclusion is far narrower than the court's holding. In *Larkins*, the plaintiffs were contesting the timeliness of the payoff statement under TILA, but the court's analysis explicitly addressed the argument of the attorney-as-agent of the creditor being sufficient to trigger the requirements of 15 U.S.C. § 1639g (which includes both timeliness and accuracy requirements). *Larkins*, 376 F. Supp. 3d at 790. The court in *Larkins*, as this Court here, finds that such an argument is "contrary to TILA's plain language." *Id.* As in *Larkins*, there is no record evidence that the agreement between Defendant and its counsel included any arrangement whereby counsel would have the authority to accept and respond to payoff requests subject to TILA on Defendant's behalf. *Id.* ("While Fifth Third's agreement to allow its foreclosure counsel to represent Fifth Third in foreclosure proceedings may qualify its counsel to be Fifth Third's agent for certain purposes, that agreement was not an

---

[8] "The Court concludes that the plain language of the statute supports Defendant's argument. Plaintiff seeks to recover damages under Sections 1639g and 1640, which impose a duty, and authorize a cause of action for damages for failure to fulfill that duty, only as to 'creditors' or 'servicers.' *See* 15 U.S.C. § 1602(g) (defining 'creditor'); 15 U.S.C. § 1602(dd)(7) and 12 U.S.C. § 2605(i)(2) (defining 'servicer'). The statute does not contemplate recovery of damages by a party whose lawyer sends an unanswered request for information to a lawyer for another party in the midst of ongoing litigation. Therefore, Plaintiff's TILA claim based on the November 9, 2016 letter is without merit."

[9] "[S]ince TILA claims are only against creditors or assignees, TILA does not create a cause of action against a law firm attempting to foreclose or collect a debt on behalf of a creditor, *Enedah v. Am.'s Servicing Co.*, No. 1:11-CV-695-AT, 2012 U.S. Dist. LEXIS 190294, 2012 WL 10973752, at *3 (N.D. Ga. Mar. 16, 2012)."

agreement for its foreclosure counsel to accept and respond to payoff requests subject to TILA on Fifth Third's behalf."); *see* Def.'s SJ Br. at 8-9.[10]

It is clear from the statute that TILA does not impose any obligations or liability on counsel to respond to consumer payoff balance requests. To adopt such an interpretation would impermissibly expand the potential for liability under TILA farther than what Congress and the Consumer Financial Protection Bureau have explicitly imposed. Therefore, the Court declines to impose liability beyond the plain language of the statute in this case.

Plaintiffs' TILA claim was the sole claim giving this matter a federal cause of action and the Court declines to exercise pendant jurisdiction of Plaintiffs' state law claims. "Absent extraordinary circumstances, where the federal causes of action are dismissed the district court should ordinarily refrain from exercising pendent jurisdiction [over the state law claims]." *Bright v. Westmoreland Cty.*, 380 F3d 729, 751 (3d Cir. 2004). Consequently, Plaintiffs' remaining claims will be remanded back to state court for adjudication.

## V.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. An order consistent with this Opinion will be entered.

November 30, 2023

KAREN M. WILLIAMS, U.S.D.J.

---

[10] Additionally, *Langenfeld*, 537 F. Supp. 2d at 1205 held that despite another provision of TILA, 15 U.S.C. § 1602(o), specifically including agents, that defendants could not be deemed "agents" for purposes of statutory section within TILA where there was no agreement regarding the requirement at issue. *See* 12 C.F.R. pt. 226, supp. I, official staff commentary, P2(a)(7).

10